ALINE J. ROSSELOT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rosselot v. Commissioner
Docket No. 10825-87
United States Tax Court
T.C. Memo 1990-254; 1990 Tax Ct. Memo LEXIS 273; 59 T.C.M. (CCH) 667; T.C.M. (RIA) 90254; May 23, 1990, Filed Arthur G. Muegler, Jr., for the petitioner. Steven W. LaBounty, for the respondent. SHIELDS, Judge. SHIELDS
*920 MEMORANDUM FINDINGS OF FACT AND OPINION In a joint notice of deficiency dated April 10, 1987, respondent determined a deficiency in and additions to the Federal income tax for 1983 of petitioner and her former husband, Robert B. Rosselot, as follows: Additions to Tax
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661(a) [1]
$ 7,294
$ 365 *
$ 729
*276 Robert B. Rosselot filed a separate petition with this Court which was assigned docket No. 23484-87. On November 29, 1988, he entered into a stipulation with respondent to be bound in docket No. 23484-87 by the resolution of the issues in this case. By an amendment to his answer in this case, respondent claimed an increase in the addition to tax under section 6661(a) of $ 1,094.50 due to the increase in the addition to tax from 10 percent to 25 percent by section 8002 of the Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, 100 Stat. 1874. Respondent, however, computed the increased addition to tax under section 6661(a) as 25 percent of the deficiency in income tax ($ 7,294) determined in the *921 notice of deficiency. Since part of such deficiency is due to unreported wage income on which income tax in the amount of $ 1,079 was withheld, the addition to tax under section 6661(a) should have been computed as 25 percent of the deficiency less the withheld income tax or $ 6,215 ($ 7,294 minus $ 1,079). . Consequently, the revised increased addition to tax claimed by respondent under section 6661(a) *277 is $ 1,553.75. The issues for decision are: (1) whether petitioner and her former husband failed to report on their joint income tax return for 1983 wage income earned by Mr. Rosselot while he was employed at Quality Volkswagen; (2) whether petitioner failed to report on the joint return dividends paid to her by Dean WitterSears; (3) whether petitioner failed to report on the joint return interest paid to her by Woods Mill 40 Bank and by Clayton Federal Savings and Loan Association; (4) whether petitioner failed to report on the joint return commissions paid to her by United States Mortgage, Griffin Financial, and Town and Country Mortgage; (5) whether the commissions received by petitioner from United States Mortgage, Griffin Financial, and Town and Country Mortgage are subject to self-employment tax; (6) whether petitioner is entitled to a net operating loss deduction in 1983 for net operating losses incurred in 1985 and 1986; (7) whether petitioner is entitled to a dependency exemption deduction for Brenda Thomlison; (8) whether petitioner is liable for additions to tax under section 6653(a)(1) and (2); and (9) whether petitioner is liable for an addition to tax under section *278 6661(a). Some of the facts have been stipulated and are so found. The stipulation of facts together with the attached exhibits are incorporated herein by this reference. Since all of the issues are primarily factual, we are combining our findings of fact and opinion. Petitioner resided in St. Louis, Missouri, when her petition in this case was filed. For the taxable year 1983 she filed a joint income tax return with Robert B. Rosselot to whom she was then married. The amount of tax shown on their joint return was zero. The remainder of our findings will be set forth and discussed in the order in which the issues are listed above. (1) Former Husband's Wage Income. Respondent determined that the joint income tax return for 1983 did not include wage income of $ 8,894 paid to Mr. Rosselot by Quality Volkswagen. Respondent's determination is presumptively correct and petitioner has the burden of proving that such income was either reported on the return or was not paid to Mr. Rosselot in 1983. ; Rule 142(a). Petitioner presented no evidence with respect to this issue and, therefore, has failed to carry her *279 burden of proof. Respondent's determination is sustained. (2) Unreported Dividends. During 1983 petitioner had an account with Dean WitterSears from which she received dividends in the amount of $ 470. Respondent determined that the dividends were taxable and were not included in the joint return. Petitioner presented no evidence on this issue. Therefore, respondent's determination is sustained. (3) Unreported Interest. For 1983 respondent determined petitioner received interest in the total amount of $ 2,154 from Woods Hill 40 Bank and Clayton Federal Savings and Loan Association which was not reported on the joint income tax return. Petitioner presented no evidence on this issue. Respondent's determination is sustained. (4) Commissions. Respondent determined that petitioner did not report the following commissions paid to her in 1983: Payor
Amount
Town and Country Mortgage
$ 13,623
United States Mortgage
4,500
Griffin Financial
2,071
Petitioner stipulated that she received gross commissions in the amount of $ 13,623.12. She offered no evidence with respect to respondent's determination that she received commissions *280 in the amount of $ 4,500 from United States Mortgage and $ 2,071 from Griffin Financial. Petitioner has failed to carry her burden of proof and, therefore, respondent's determination on this issue is sustained. (5) Self-Employment Tax. Respondent determined that the commissions paid to petitioner in 1983 by Town and Country Mortgage, United States Mortgage, and Griffin Financial are subject to self-employment tax under sections 1401 through 1403. Since petitioner presented no evidence on this issue, she has failed to meet her burden of proof. Respondent's determination is sustained. (6) Net Operating Loss Deduction. In an amended return for 1983 petitioner claimed deductions for net operating losses for 1985 and 1986 in the amounts of $ 29,690.31 and $ 67,299.59, respectively. On her individual return for 1985 petitioner reported that she had a loss of $ 27,379.25 from the operation of an apartment rental and mortgage banking business, that her distributive share of the loss of a subchapter S corporation known as IntegrityInvestment Corporation was $ 5,859, and that *922 she had interest income of $ 5,547.94 for a net operating loss in that year of *281 $ 27,690.31 ($ 27,379.25 + $ 5,859.00 - $ 5,547.94). On her 1986 individual return petitioner reported that her distributive share of the loss from Integrity Investment Corporation was $ 86,347.68 and that her income from wages, interest, and alimony was $ 19,048.09 for a net operating loss in that year of $ 67,299.59. The apartment rental and mortgage banking business reported on the 1985 return was a joint venture by petitioner with her uncle, Norman Deweese, in which they had purchased on or about February 29, 1984, as joint tenants nine condominiums for $ 352,250. Part of the purchase price ($ 70,450) was paid by Mr. Deweese and the balance of $ 281,800 was financed with adjustable rate notes made jointly by petitioner and Mr. Deweese to Gravois Home Savings and Loan. The notes were secured by individual deeds of trust on the condominiums. On her 1985 return petitioner reported $ 7,925 as income from the joint venture with Mr. Deweese and claimed $ 35,304.25 in deductible expenses for a net loss of $ 27,379.25. The expenses claimed by petitioner on the 1985 return with respect to the joint venture were as follows: Item
Amount
Interest
$ 12,525.40 Taxes
567.00 Repairs
525.00 Federal Express Fees
417.00 Postage
318.85 Telephone
306.92 Car Gas/Oil
616.17 Expendable Items
3,442.93 Business Travel
2,504.75 Supplies
1,972.65 Entertainment
1,176.96 License Fees
914.50 Accounting
527.33 Insurance
367.14 Worthless Security/Bad Debt
3,500.00 Credit Reports
674.40 Apartment Fees
1,500.00 Deweese Adjustment
<4,027.18>
Depreciation
6,399.45 Miscellaneous
1,075.00 Total
$ 35,304.25 *282 At trial petitioner offered no evidence that the claimed expenses were actually incurred in connection with the nine condominiums. Consequently, the record contains no evidence to support a finding of how the expenses were paid, or if paid what portion, if any, was paid by petitioner. Furthermore, the claimed expenses included a bad debt for a loan allegedly made to the National Youth Development Foundation. But the record contains no proof to support the existence of such a debt, how it became uncollectible in 1985, or how it was related to the joint venture. Finally, the deduction claimed for depreciation apparently includes all of the depreciation accruing with respect to the nine condominiums from January 1, 1985, through the end of March when they were transferred to Integrity Investment Corporation by petitioner and Mr. Deweese. Yet the record contains no explanation of why petitioner was entitled to all of such depreciation. From the foregoing in particular and the record as a whole, we conclude that petitioner has failed to carry her burden of proving that she incurred any loss in 1985 with respect to the joint venture with Mr. Deweese which can be carried back to 1983. *283 The individual deeds of trust on the nine condominiums securing the notes totaling $ 281,800 to Gravois Home Savings and Loan were not released prior to the transfer by petitioner and Mr. Deweese of the condominiums to Integrity Investment Corporation (Integrity). Therefore, the condominiums were acquired by the corporation subject to the deeds of trust. Upon the transfer of the nine condominiums to Integrity, petitioner and Mr. Deweese each received 100 shares of the corporation's stock. Thereafter at all relevant times, Integrity was a subchapter S corporation controlled by petitioner and Mr. Deweese. Where, as in this case, property is transferred by individuals to a corporation solely in exchange for stock in the corporation, and immediately after the exchange the individuals are in control of the corporation, no gain or loss is recognized by the individuals. Sec. 351(a). The basis of any stock received by a transferor in an exchange which qualifies under section 351(a) is the same as the transferor's basis in the property exchanged decreased by the amount of any money received. Sec. 358(a)(1)(A)(ii). Where as here the corporation in the exchange acquires from the transferor *284 property subject to a liability, the amount of the liability is treated as money received by the transferor. Sec. 358(d)(1). Section 358(a)(1) provides, in relevant part, that in the case of an exchange to which section 351 applies, the basis of the stock received by a stockholder in the exchange is the same as his basis in the property exchanged decreased by any money received. Respondent contends that in the taxable years 1985 and 1986 petitioner had no basis in her stock in the corporation; and therefore, she is not entitled to deduct any part of the corporation's losses for those years because under section 1366(d)(1)(A) her share of such losses is limited to her basis in the stock. As we understand it, petitioner's position is that she is entitled to her share of the corporation's *923 losses because she had a basis of $ 237,125 in her stock composed of her basis in the following items which she transferred to the corporation: Item Transferred
Basis
(a)
1983 Chrysler
$  12,500
(b)
Cash
20,000
(c)
Cash
15,000
(d)
National Inheritance
Note Receivable
3,500
(e)
Office Furniture
and Equipment
10,000
(f)
Nine Condominiums
176,125
Total
$ 237,125
*285 We will discuss below each of the items listed by petitioner. (a) 1983 Chrysler. Petitioner has failed to meet her burden of proof with respect to this item. First, the record is devoid of any evidence that the automobile was actually transferred to the corporation such as a bill of sale or other evidence of a conveyance or an assignment of insurance on the car. In fact no insurance costs with respect to the car were claimed by the corporation on its return for 1985. Secondly, the car was allegedly used by petitioner in her trade or business during 1983 and 1984 because she claimed a deduction for depreciation with respect to the car for those years. But she has made no attempt to adjust her basis in the car at the time of its alleged transfer to the corporation. Thirdly, she testified that at its purchase the car was financed up to $ 10,000 but the record contains no evidence of the amount of the lien at the date it was transferred to the corporation. We are unable to conclude therefore that she transferred a Chrysler automobile in which she had a basis of $ 12,500 to Integrity in exchange for her stock. (b) and (c) Cash. Petitioner claims that in exchange for *286 her stock she transferred to the corporation cash in the amount of $ 20,000 from the joint venture with Mr. Deweese and $ 15,000 which she had in a personal account. As to the cash accumulated from the joint venture, her testimony is contradicted by the schedule attached to her individual return for 1983 on which she claimed out-of-pocket expenses greatly in excess of receipts by the joint venture from the nine condominiums. Consequently, her uncorroborated testimony of a cash accumulation by the joint venture during the same period is not convincing. The record contains no evidence in support of her claim that $ 15,000 was transferred from her personal account to the corporation at the time of its formation. We are unable to find, therefore, that she transferred cash in the amounts of $ 20,000 and $ 15,000 to the corporation in exchange for her stock. (d) National Inheritance Note. Petitioner's subscription agreement with Integrity refers to a promissory note from National Youth Foundation and National Inheritance Corporation which petitioner agreed to transfer to the corporation at a value of $ 3,500. Her claim of an equal amount of basis in her Integrity stock for this *287 item is discredited by the fact that on her 1983 return she claimed a bad debt deduction for the same note. (e) Office Furniture and Equipment. This item does not appear on the depreciation schedule in petitioner's income tax return for 1983 and at trial she failed to present any other evidence of her basis in such property. Consequently, she has failed to establish any basis in her stock which is attributable to this item. (f) Nine Condominiums. This item consists of two parts. First, petitioner claims that as part of her basis in the stock, she is entitled to one-half of the down payment made by Mr. Deweese in the purchase of the condominiums. Secondly, she claims that as part of such basis she is entitled to one-half of the amount financed with the loans from Gravois Home Savings and Loan. At trial both petitioner and Mr. Deweese testified that while the down payment on the nine condominiums was made by Mr. Deweese, it was understood that one-half of the down payment or $ 35,225 was to constitute a loan by Mr. Deweese to petitioner. With the exception of their testimony, the existence of such a loan is not supported by the record. First, the parties admit that *288 the alleged loan was not evidenced by any writing, secured in any manner, or subject to any interest or a payment schedule. In fact, Mr. Deweese testified that he did not know if or when he would be repaid. From such evidence, we cannot conclude that there was an agreement by Mr. Deweese to loan one-half of the down payment on the purchase of the nine condominiums or that petitioner is entitled to credit any part of the down payment to her basis in the Integrity stock. Finally, petitioner argues that she is entitled to claim as basis in her stock one-half of that portion of the purchase price of the nine condominiums which was financed by the notes due Gravois Home Savings and Loan. This argument is inapposite, however, because where as here property subject to a debt is transferred to a corporation in exchange for stock in an exchange which qualifies under section 351, the amount of the debt represents money received by the transferor, section 358(d)(1), and decreases the basis of the transferor in the stock received in exchange for the property. Sec. 358(a)(1)(A)(ii). Petitioner admits that the nine condominiums were encumbered by deeds of trust as security for the payment *289 of the notes due Gravois Home *924 Savings and Loan. She also admits that if there had been a default on the notes, Gravois Home Savings and Loan could foreclose on the deeds of trust to satisfy the notes. Therefore, the nine condominiums were acquired by Integrity subject to the liability secured by the deeds of trust. Consequently, petitioner's portion of the liability is treated as money received by her, section 358(d)(1), and reduces her basis in the stock. Sec. 358(a)(1)(A)(ii). Therefore, petitioner has failed to prove that she had any basis in the stock which she acquired from Integrity and under section 1366(d) she is not entitled to deduct a share of the net operating losses incurred by Integrity for the taxable years 1985 and 1986. (7) Dependency Exemption for Brenda Thomlison. In her amended return for 1983 petitioner also claimed a dependency exemption deduction for Brenda Thomlison. From the testimony of petitioner and Ms. Thomlison we find that during 1983 Ms. Thomlison was not petitioner's daughter or stepdaughter but during 1983 she lived with petitioner. We also find that during four or five months in 1983, Ms. Thomlison was employed and from *290 such employment received gross income in excess of $ 1,000. For 1983 a taxpayer was entitled to claim an exemption for a dependent, as defined in section 152, whose gross income for the calendar year in which the taxable year of the taxpayer began was less than $ 1,000, or who was a child of the taxpayer and had not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer began, or was a student. Sec. 151(e)(1). A child includes a daughter or stepdaughter of the taxpayer. Sec. 151(e)(3). Based on the testimony of petitioner and Ms. Thomlison, we conclude that petitioner is not entitled to a dependency exemption for Brenda Thomlison for 1983. (8) Additions to Tax Under Section 6653(a)(1) and (2). Under section 6653(a)(1), a five-percent addition to tax is applicable in 1983 to an entire underpayment if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. The addition to tax is clearly applicable here because petitioner failed to report on her joint income tax return wages, commissions, dividends, and interest. Section 6653(a)(2), which is also applicable to 1983, provides that *291 there shall be added to the tax an amount equal to 50 percent of the interest payable under section 6601 with respect to any portion of an underpayment attributable to negligence or the intentional disregard of rules or regulations. The underpayment in this case is the result of adjustments for unreported wages, commissions, dividends, interest, and self-employment tax on commissions. Since petitioner has presented no evidence of reasonable cause with respect to any of the adjustments, respondent's determination that the entire underpayment is due to negligence is sustained. (9) Section 6661(a) Addition to Tax. Under section 6661(a) there is added to the income tax for the taxable year in which there is a substantial understatement of income tax an amount equal to 25 percent of the amount of the underpayment attributable to the understatement. An understatement of income tax is considered substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $ 5,000. Sec. 6661(b)(1)(A). An understatement of tax is defined as the excess of the amount of tax required to be shown on the return for the taxable year over *292 the amount of the tax shown on the return. Sec. 6661(b)(2)(A). Respondent determined in the notice of deficiency that there was a substantial understatement of income tax for 1983. The amount of tax required to be shown on petitioner's joint Federal income tax return for 1983 is $ 7,294. The amount of tax shown on her return is zero. The understatement of income tax for purposes of section 6661(a) is $ 7,294. Since the understatement exceeds the greater of 10 percent of the tax required to be shown on petitioner's return for the taxable year 1983 or $ 5,000, the understatement of income tax is substantial. Thus, the addition to tax is applicable. In the notice of deficiency respondent computed the addition to tax under section 6661(a) as 10 percent of the understatement. With leave of the Court, respondent filed an amended answer increasing the rate of the addition to tax to 25 percent to reflect the amendment of section 6661(a) by section 8002 of the Omnibus Budget Reconciliation Act of 1986, effective for such additions to tax assessed after October 21, 1986. Since any addition to tax under section 6661(a) applicable to this case will be assessed after October 21, 1986, the *293 addition is computable at 25 percent of the understatement. Because of the existence of a withholding credit in the amount of $ 1,079, which has not been rebated to petitioner or her former husband, the amount of the addition to tax under section 6661(a) is $ 1,553.75. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for 1983, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure. * 50 percent of interest due on $ 7,294.↩